UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| AMIE SMITH, et al., | ) |
| | ) |
|    Plaintiff(s), | ) |
| | ) |
|    vs. | )   Case No. 4:20-cv-00761 SRC |
| | ) |
| IDEAL IMAGE DEVELOPMENT | ) |
| CORPORATION, et al., | ) |
| | ) |
|    Defendant(s). | ) |

**Memorandum and Order**

This matter comes before the Court on [12] Defendants Ideal Image Development Corporation and Angie Lanasa's Motion to Dismiss all claims against Lanasa. The Court grants the Motion.

**I.   Background**

Plaintiffs worked as inside sales agents and support personnel for Ideal Image's numerous med spa locations throughout the United States and Canada. Based out of Ideal Image's lead resource center in St. Louis County, Missouri, Plaintiffs solicited orders for services at Ideal Image's med spas, and they received base salary, plus commission for sales of services.

In the wake of the COVID-19 pandemic, Ideal Image laid off approximately 90% of the employees at the St. Louis center, including Plaintiffs. Plaintiffs claim that Defendants Ideal Image and Angie Lanasa, an Ideal Image executive, failed to pay the full and correct amount of each Plaintiff's last paycheck by not including unpaid commissions and deducting health insurance even though Plaintiffs no longer received coverage. Plaintiffs also allege that

1

Defendants promised to pay out Plaintiffs paid-time-off ("PTO") in exchange for remaining with Ideal Image, but never did after laying them off.

Plaintiffs assert four counts against Defendants: 1) Violation of the Missouri sales commission statute - MO. REV. STAT. § 407.911, *et seq.*; 2) Violation of the Missouri final pay statute - MO. REV. STAT. §§ 290.110, 290.140; 3) breach of contract; and 4) Violation of the Worker Adjustment and Retraining Notification Act - 29 U.S.C. § 2101, *et seq.* (against Ideal Image only).  Defendants now move to dismiss all claims against Lanasa.

**II.     Standard**

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a claim for "failure to state a claim upon which relief can be granted." The notice pleading standard of Rule 8(a)(2) requires a plaintiff to give "a short and plain statement showing that the pleader is entitled to relief." To meet this standard and to survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citation omitted).  This requirement of facial plausibility means the factual content of the plaintiff's allegations must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Park Irmat Drug Corp. v. Express Scripts Holding Co.*, 911 F.3d 505, 512 (8th Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678).  The Court must grant all reasonable inferences in favor of the nonmoving party. *Lustgraaf v. Behrens*, 619 F.3d 867, 872-73 (8th Cir. 2010).  Ordinarily, only the facts alleged in the complaint are considered for purposes of a motion to dismiss; however, materials attached to the complaint may also be considered in construing its sufficiency. *Reynolds v. Dormire*, 636 F.3d 976, 979 (8th Cir. 2011).

When ruling on a motion to dismiss, a court "must liberally construe a complaint in favor of the plaintiff[.]" Huggins *v. FedEx Ground Package Sys., Inc.*, 592 F.3d 853, 862 (8th Cir. 2010).  However, if a claim fails to allege one of the elements necessary to recover on a legal theory, the Court must dismiss that claim for failure to state a claim upon which relief can be granted.  *Crest Constr. II, Inc. v. Doe*, 660 F.3d 346, 355 (8th Cir. 2011).  Threadbare recitals of a cause of action, supported by mere conclusory statements, do not suffice.  *Iqbal*, 556 U.S. at 678; *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007).  Although courts must accept all factual allegations as true, they are not bound to take as true a legal conclusion couched as a factual allegation.  *Twombly*, 550 U.S. at 555 (internal quotations and citation omitted); *Iqbal*, 556 U.S. at 677-78.

**III.   Discussion**

  **A.   Application of the *Iqbal/Twombly* pleading standards to plaintiffs' complaint**

Before analyzing the specific elements of Plaintiffs claims, *Iqbal* instructs the Court to first identify the allegations in the Complaint not entitled to the assumption of truth, then to assume the veracity of the well-pleaded factual allegations, and finally, to determine if they plausibly give rise to an entitlement to relief.  *Id*. at 677-79.

  **1.   Conclusory allegations**

*Iqbal* instructs courts to begin the motion-to-dismiss analysis by "identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id*. at 679.  Consistent with *Iqbal*, the Court does not state here *every* conclusory allegation in the Complaint, instead focusing on those most relevant to the claims at issue.  Plaintiffs allege "Defendants collectively employed Plaintiffs and managed and operated Ideal Image's Lead Resource Center in St. Louis County, Missouri at all times relevant to this Petition." Doc. 1-1 at

3

¶ 17.  "Defendants were jointly responsible for ensuring Plaintiffs were correctly paid." *Id*. at ¶ 21.  "Plaintiffs were engaged as sales representatives as defined in § 407.911.1(3) employed by Defendants Ideal Image and Lanasa." *Id*. ¶ 90.  Ideal Image and Lanasa constitute "principals" as defined in the Missouri sales commission statute. *Id.* at ¶ 94.  These, and other allegations, lack "sufficient factual matter," and because they are no more than conclusions, they "are not entitled to the assumption of truth." *Iqbal*, 566 U.S. at 678, 679.

### 2. **Well-pleaded factual allegations**

Under *Iqbal*, the Court next assumes the veracity of Plaintiffs' well-pleaded factual allegations. 556 U.S. at 679.  *Iqbal*, likewise, does not require the Court to state here every well-pleaded factual allegation in the Complaint.

Ideal Image, a foreign corporation, has a large corporate call center in St. Louis County, Missouri.  Doc. 1-1 at ¶ 2.  Ideal Image employed Lanasa, who served as an executive acting for the benefit of Ideal Image at the St. Louis corporate office. *Id*. at ¶¶ 18, 20.  Plaintiffs worked in sales roles at the St. Louis call center. *Id*. at ¶ 2.  Plaintiffs had an agreement with Ideal Image[1] in which Plaintiffs would work as sales representatives for Defendants and in exchange, Plaintiffs would receive a forgivable draw each month in addition to commissions. *Id*. at ¶¶ 40, 41.  Plaintiffs also had an agreement with Ideal Image[2] where Plaintiffs would earn PTO in exchange for Plaintiffs' agreement to work full time for Defendants. *Id*. at ¶¶ 42, 43.  Ideal Image[3] promised to provide health insurance to Plaintiffs and deducted Plaintiffs' paychecks each month

---

[1] While Plaintiffs allege having agreement with "Defendants" here, Plaintiffs fail to plausibly allege sufficient factual matter for the Court to reasonably conclude a contract existed between Plaintiffs and Lanasa, as explained below.
[2] *Id*.
[3] *Id*

4

to pay for coverage. *Id*. at ¶ 108.  Plaintiffs had a health insurance plan through Ideal Image. *Id*. at ¶ 83.

"On March 18, 2020, Ideal Image sent out an email letting employees know that Ideal Image would be closing med spas nationwide in light of COVID-19.  Ideal Image, in this message, promised Plaintiffs and other employees all of their PTO would be paid." *Id*. at ¶ 68.  "On approximately March 20, 2020, on a company wide call, the Ideal Image's CEO tells the Ideal Image employees that they can take all of their PTO and they should stick it out with Ideal Image." *Id*. at ¶ 70.  "On March 24, 2020, Ideal Image, without warning, laid off more than 50 full-time employees representing much more than one third (1/3) of the workforce at the lead resource center in St. Louis County, Missouri." *Id*. at ¶ 72.

**B.     Breach of contract**

To state a claim for breach of contract against Lanasa, Plaintiffs must allege 1) the existence of a contract with Lanasa; 2) that Plaintiffs performed under the contract; 3) that Lanasa breached the contract; and 4) damages. *Moore v. Armed Forces Bank, N.A.*, 534 S.W.3d 323, 327 (Mo. App. W.D. 2017).  Defendants argue Lanasa never contracted with any Plaintiff. Doc. 13 at 5.

Beginning with the first element, Plaintiffs must plausibly allege sufficient factual matter for the court to reasonably conclude a contract existed between Plaintiffs and Lanasa.  Accepting the well-pleaded factual allegations as true, Plaintiffs allege that they agreed to work for Ideal Image in exchange for a salary, commissions, PTO, and healthcare coverage.  The question remains, however, whether Plaintiffs adequately allege Lanasa became a party to the contract. The only well-pleaded factual allegations specific to Lanasa state that Ideal Image employed her and that she served as an executive acting for the benefit of Ideal Image. Doc. 1-1 at ¶¶ 18, 20.

Plaintiffs never allege she acted outside the scope of her employment.  Nor do Plaintiffs allege having an agreement with Lanasa that they did not also have with Ideal Image.  Thus, from the well-pleaded factual allegations, Lanasa served as an agent of Ideal Image throughout the course of her dealings with Plaintiffs.  For the reasons stated below, such allegations fail to state a claim for breach of contract against Lanasa.

"[U]nder Missouri law, an agent for a disclosed principal is not a party to a contract and is not liable for its nonperformance." *Ancell v. U.S. Bank Tr., N.A*., No. 2:13-CV-04251-NKL, 2014 WL 2048200, at *4 (W.D. Mo. May 19, 2014) (citing *Hardcore Concrete, LLC v. Fortner Ins. Servs., Inc.*, 220 S.W.3d 350, 355 (Mo. Ct. App. 2007)).  "An agent does not have liability for the breach of contract entered into on behalf of a disclosed principle in the absence of evidence that the agent intended to be personally liable." *1215 Pine, LLC v. Travelers Ins. Co*., No. 4:05-CV-1532 (CEJ), 2006 WL 587660, at *2 (E.D. Mo. Mar. 10, 2006) (citing *Benson Optical Co., Inc. v. Floerchinger*, 810 S.W.2d 531, 534 (Mo. Ct. App. 1991)).  Thus, the Court must assess whether the well-pleaded factual allegations plausibly show that Lanasa intended to be personally liable for a contract entered between Plaintiffs and Ideal Image.

Besides the factual allegations specific to Lanasa mentioned above, Plaintiffs do not make allegations about Lanasa specifically and instead make allegations about "Defendants" collectively.  For example, Plaintiffs allege they had an agreement with Defendants to "solicit orders for Defendants' services" and in exchange "were paid a salary and then commission based on consults and sales of services." Doc. 1-1 at ¶¶ 25, 26.  Plaintiffs had an agreement with Defendants where they would earn PTO based on the hours worked for Defendants and in return, Plaintiffs agreed to work full time as sales representatives. *Id*. at ¶¶ 42, 43.  Plaintiffs agreed to permit Defendants to deduct from their paychecks so they could have health insurance. *Id*. at ¶

6

108. Plaintiffs make no factual allegations supporting that Lanasa took any action outside the scope of her employment or undertook obligations distinct from Ideal Image.

Tellingly, the more detailed factual allegations specify Ideal Image as the only defendant making promises to Plaintiffs. In detailing the events occurring after the onset of the COVID-19 pandemic, Plaintiffs allege "[o]n March 18, 2020, Ideal Image sent out an email letting employees know that Ideal Image would be closing med spas nationwide in light of the COVID-19 pandemic. Ideal Image, in this message, promised Plaintiffs and other employees all of their PTO would be paid." *Id*. at ¶ 68. "On approximately March 20, 2020, on a company wide call, the Ideal Image's CEO tells the Ideal Image employees that they can take all of their PTO and they should stick it out with Ideal Image." *Id*. at ¶ 70. Significantly, these allegations make no reference to Lanasa, and Plaintiffs fail to make similarly-detailed allegations involving Lanasa.

While Plaintiffs do state that "Defendants collectively employed Plaintiffs," Doc. 1-1 at ¶ 17, and "were jointly responsible for ensuring Defendants were correctly paid," Doc. 1-1 at ¶ 21, as noted, these statements constitute legal conclusions and the Court does not accept them as true. *Iqbal*, 566 U.S. at 678, 679. In sum, the only specific allegations regarding Lanasa state that Ideal Image employed her, and she acted for its benefit. The remaining allegations involving Lanasa fail to distinguish her from Ideal Image. Accordingly, while Plaintiffs allege they "had an agreement" with Defendants, they fail to allege facts supporting an agreement with Lanasa personally. Thus, Plaintiffs have not stated any well-pleaded factual allegations from which the Court could infer that Lanasa undertook any obligations to Plaintiffs outside her status as an agent for Ideal Image. Put another way, the Court cannot infer that Lanasa ever intended to be personally liable under any contract Ideal Image entered into. Accordingly, Plaintiffs have

not adequately alleged Lanasa became a party to any contract with Plaintiffs and the Court dismisses the breach of contract claim against Lanasa.

### C. Missouri sales commission statute—Mo. Rev. Stat. § 407.911, *et seq*.

The Missouri sales commission statute imposes liability on "[a]ny principal who fails to timely pay the sales representative commissions earned by such sales representative . . . ." Mo. Rev. Stat. § 407.913.  The statute defines a "principal" as a "person, firm, corporation, partnership or other business entity . . . who . . . contracts with a sales representative to solicit orders for the product or services; and compensates the sales representatives, in whole or in part, by commission[.]" Mo. Rev. Stat. § 407.913(2)(b-c).  Here, for the reasons discussed above, Plaintiffs have not pleaded sufficient allegations for the Court to draw an inference that Lanasa contracted with Plaintiffs.  As such, Plaintiffs did not plausibly allege sufficient factual matter for the Court to reasonably conclude that Lanasa constitutes a principal under the statute, and the Court dismisses the sales-commission-statute claim against Lanasa.

### D.     Missouri final pay statute—Mo. Rev. Stat. §§ 290.110 and 290.140[4]

Plaintiffs claim that Lanasa violated the Missouri final pay statute, Mo. Rev. Stat. § 290.110, by failing to pay Plaintiffs all their unpaid commissions, making improper deductions from their final paychecks, and for failing to pay out the PTO promised to them. Doc. 1-1 at 15. Defendants argue that the unpaid renumeration Plaintiffs seek cannot be recovered under the statute and that Lanasa has no responsibility to pay Plaintiffs' final paycheck. Doc. 13 at 8-9.

---

[4] The Complaint references Mo. Rev. Stat. § 290.140, the Missouri service letter statute.  Under the statute, an employee discharged from a corporation may request a letter from the corporation "setting forth the nature and character of service rendered by such employee to such corporation and the duration thereof, and truly stating for what cause, if any, such employee was discharged or voluntarily quit such service." *Id*.  Here, Plaintiffs make no allegations that they sought such a letter. The written notice Plaintiffs allegedly provided to Defendants "demanded their last paycheck, in the correct amounts, in accordance with Section 290.110." Doc. 1-1 at ¶ 102.  Thus, Plaintiffs seek to recover under Section 290.110 and not Section 290.140.  Moreover, any claim under Section 290.140 would fail because only a corporation may be held liable under the statute. *Bartow v. State Farm Mut. Auto. Ins. Co.*, 531 F. Supp. 20 (W.D. Mo. 1981) ("The duty imposed by the service letter statute is the duty of the corporation.").

Under the plain language of the statute, Section 290.110 applies only to employers. It states:

> [w]henever any person, firm or corporation doing business in this state shall discharge, with or without cause, or refuse to further employ any servant or employee thereof, the unpaid wages of the servant or employee then earned at the contract rate, without abatement or deduction, shall be and become due and payable on the day of the discharge or refusal to longer employ . . . .

Mo. Rev. Stat. § 290.110.  Moreover, the Eighth Circuit has explained that the statute "requires employers to pay discharged employees all back pay promptly." *Aaron v. Brown Grp., Inc*., 80 F.3d 1220, 1224 (8th Cir. 1996).  As such, Plaintiffs must plausibly allege facts from which the Court could infer that Lanasa was an employer.

As explained above, Plaintiffs' well-pleaded factual allegations show that Lanasa acted as an agent of Ideal Image.  The Plaintiffs have not alleged Lanasa acted beyond the scope of her employment.  Therefore, without any allegations suggesting that Lanasa could constitute an employer, Plaintiffs fail to state a claim under Section 290.110, and the Court likewise dismisses this claim against Lanasa.

In sum, Plaintiffs failed to adequately plead any of the claims asserted against Lanasa. Accordingly, the Court grants [12] Defendants' Motion to Dismiss and dismisses all claims against Defendant Angie Lanasa without prejudice.

So Ordered this 5th day of November 2020.

_____
**STEPHEN R. CLARK**
**UNITED STATES DISTRICT JUDGE**